# Wytheville

ANNA McELROY v. JOHN H. ROLSTON, EXECUTOR, ET ALS.

June 6, 1945.

Record No. 2945.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Greenlee D. Letcher* and *George S. Harnsberger*, for the appellant.

*Ward Swank*, for John H. Rolston, Executor.

*Laird L. Conrad*, for Rockingham Memorial Hospital.

SPRATLEY, J., delivered the opinion of the court.

Alice Wright, a maiden lady 77 years of age, who lived at Mt. Clinton, Rockingham county, Virginia, died on Feb-

ruary 25, 1941, at the Rockingham Memorial Hospital, Harrisonburg, Virginia. She left an estate of about $9,000, consisting of a farm of 77 acres and some personal property.

After her death there was found in a locked secret drawer in her desk at her home a paper wholly in her handwriting, written with pen and ink, on one side of a lined sheet of legal cap paper, covering approximately two-thirds of the page. That writing contains the following language, in lines and paragraphs as herein set out:

"June 6 1926
Alice Wright    Mt Clinton Va
This satment is writen buy
my hand and it is as what I wont
done with My Estate after my death
first of all Dets shall be paid and
also ever one that renders enny help
in enny way I wont them two be
paid And wont a nice Coffen & a
good wood Box and have the
Furnel at the house and I wont Paul
Paid full wages for all work done that I
have not Paid him for. and I wont
sister Anna two have $10.00 ten dolors
Monney and all of the reste of my
Property Two Go Two the Memorel
Hospile I name John Rolston for
for the Man Two setle my
Estate"

The writing was found after a search directed by Paul Wright, who had been told by Alice Wright, in 1926, that she had a will and had given him a "little something" and the rest of her property to the hospital. She further told him that it was in her own handwriting and was in her desk.

Paul Wright is the "Paul" referred to in the paper, a third cousin of Alice Wright, whom at the age of nine she

had taken into her home to rear. With the exception of about one year he had remained continuously with Alice Wright, working her farm and residing thereon until her death.

The sister "Anna", to whom a legacy of $10.00 is given in the paper, is Anna McElroy, sister of Alice Wright, and her nearest surviving relative.

The "Memorel Hospile" referred to is the Rockingham Memorial Hospital.

On February 25, 1941, the above writing was, in an *ex parte* proceeding, admitted to probate by the clerk of the circuit court of Rockingham county as the last will and testament of Alice Wright, and John H. Rolston qualified as executor thereof. An appeal from this probate was duly taken to the circuit court of Rockingham county by Anna McElroy on May 9, 1941. In March, 1941, for the purpose of obtaining a construction of the instrument and a settlement and distribution of the estate under the direction of the court, the present suit was instituted by the executor. Anna McElroy filed her answer denying that the paper constituted a valid last will and testament.

About a year later, Sue Wright, a distant cousin of Alice Wright, filed in the suit a petition alleging that Alice Wright had executed a will subsequent to June 6, 1926, and that said will, which gave the principal part of the estate to her, had been lost or destroyed and could not be produced. Depositions were taken on the issue raised by this petition, and, it was later agreed that they might be considered, as far as pertinent, in the trial of the issues in this cause.

The judge of the Circuit Court of Rockingham county having disqualified himself from sitting in the case, the cause was duly transferred to the Circuit Court of Augusta county. The latter court, taking up first the issue raised by Sue Wright, and, being of opinion that the evidence was insufficient to establish the alleged lost will, dismissed her petition. From this decision no appeal was taken.

A jury being waived, the trial court, on an issue of

*devastavit vel non,* to determine the validity of the alleged will, after considering the evidence, in a written opinion made a part of the record, held that the paper writing of June 6, 1926, was a valid will of Alice Wright, and thereupon entered a decree affirming the order of probate of the clerk of the Circuit Court of Rockingham county. From that decree Anna McElroy perfected this appeal.

The appellant contends, first, that the evidence shows that Alice Wright did not execute the paper writing with testamentary intent and, second, that she did not sign it in such a manner as to make it manifest that her name as placed thereon was intended as her signature.

The first contention needs little consideration. The instrument before us is a statement of the will and desire of Alice Wright, on June 6, 1926, as to the disposition of her property after her death, which even includes her wishes as to the kind of casket and the nature of the burial service to be held for her. It was written in her own handwriting, in language, incorrect in spelling, punctuation and grammar, but nevertheless capable of but one meaning, the meaning expressed above. Extrinsic evidence of her testamentary intent is conflicting, but that in support of lack of testamentary intent is, as said by the judge of the trial court, "unsatisfactory, inconclusive and untenable" and must give way to the clear intent of the writing itself.

The contention that Alice Wright did not sign the paper writing in such manner as to make it manifest that her name was intended as a signature is controlled by Virginia Code, 1942 (Michie), section 5229, as interpreted a number of times by this court.

The material part of Code, 1942 (Michie), section 5229, is as follows: "No will shall be valid unless it be in writing and signed by the testator, * * * in such manner as to make it manifest that the name is intended as a signature; * * * "

We have had frequent occasions to interpret this statute. The rule to be applied in the present issue is clearly and

fully stated in the following cases: *Ramsey* v. *Ramsey*, 13 Gratt. (54 Va.) 664, 670, 70 Am. Dec. 438; *Roy* v. *Roy*, 16 Gratt. (57 Va.) 418, 84 Am. Dec. 696; *Warwick* v. *Warwick*, 86 Va. 596, 603, 10 S. E. 843, 6 L. R. A. 775; *Dinning* v. *Dinning*, 102 Va. 467, 46 S. E. 473; *Murguiondo* v. *Nowlan*, 115 Va. 160, 78 S. E. 600; *Meany* v. *Priddy*, 127 Va. 84, 102 S. E. 470; *Forrest* v. *Turner*, 146 Va. 734, 133 S. E. 69; *Hamlet* v. *Hamlet*, 183 Va. 453, 32 S. E. (2d) 729.

It is essential to a valid will that there be testamentary intent and that testamentary paper be executed in accordance with the provisions of the statute. Both must concur. As succinctly stated in *Warwick* v. *Warwick*, *supra*: "The signing required by the statute must manifestly appear to be intended as a signature from the face of the instrument, which must appear, by internal evidence, equally convincing as the signing at the foot or end; that it must be manifest. The finality of the testamentary intent must be ascertained from the face of the paper, and extrinsic evidence is not admissible either to prove or disprove it".

There was a holographic writing before us in each of the cases of *Ramsey* v. *Ramsey*, *supra*, *Roy* v. *Roy*, *supra*, *Warwick* v. *Warwick*, *supra*, and *Hamlet* v. *Hamlet*, *supra*, in which the author of the respective instruments had inserted his name in the opening clause or the beginning of the writing. We held in each case that such insertion of the name was "an equivocal act", and in the absence of any affirmative evidence on the face of the paper, it was not manifest that the name was intended as a signature to the paper.

In *Forrest* v. *Turner*, *supra*, in which many of the preceding Virginia cases involving application of the statute were referred to, this court said: "No mere intention or effort to dispose of property by will, however clearly and definitely expressed in writing, is sufficient; unless the name is so placed that it is manifest from the whole writing itself that it was intended as a signature to the paper. * * * The name need not be at the end of the page. The writing

of the testator's name in the exordium or opening clause of the will is of itself not a signature to the will, as it does not indicate finality of intention to authenticate the concluded act of disposition of his property".

*Forrest* v. *Turner, supra,* restated and approved the construction placed upon the statute in *Meany* v. *Priddy, supra.* In the last mentioned case there was a holographic writing entitled "Virginia Deane Meany's will", but her name did not otherwise appear thereon, except in the second of six consecutively numbered items, indicating her wish to make certain devises and bequests. The writing was found after her death in a sealed envelope upon which Mrs. Meany had written, "Mrs. Virginia Deane Meany's last will, January 9-18". In holding that the instrument was not valid as 'a will because of the lack of a signature as required by statute, Judge Prentis (afterwards Chief Justice), said: "It is not sufficient to raise a doubt as to whether his name is intended to authenticate the paper which is propounded as a will, for, to use the explicit language of the statute, it must be signed 'in such a manner as to make it manifest that the name is intended as his (a) signature', and unless so signed it is not valid". Code, 1919, section 5229. (Cases cited).

The statute does not specify where the signature shall be placed on a written instrument intended to be a will. Accordingly, we have held that it is not necessary that it be placed at the foot or end of the instrument if there be internal evidence on its face that it was intended as a signature. Thus in *Dinning* v. *Dinning, supra, Murguiondo* v. *Nowlan, supra, Forrest* v. *Turner, supra,* and *Presbyterian Orphans' Home* v. *Bowman,* 165 Va. 484, 182 S. E. 551, in each of which we found such internal evidence did appear on the face of the instruments involved, as stated by Mr. Justice Eggleston in *Hamlet* v. *Hamlet, supra,* in an analysis of those cases, we held that the questioned signing complied with the requirements of the statute.

The name of a person at the top of a written instrument, without any reference whatever to it in the body of the

instrument, manifests no clearer intention of the signer that it is intended as his signature to the instrument than his name appearing in the opening clause thereof, or elsewhere in its body, without evidence or explanation on the face of the paper showing that such name was signed there for the purpose of ratifying and authenticating its contents. It connects the writer with the paper, but it does not show a finality and completion of testamentary intent.

In the present case there is not a word or explanation in the paper before us which in any way indicates that Alice Wright intended her name at the top of the page to be her signature to the will or that it was her concluded act in the disposal of her property after her death. Her name so placed is aided by no evidence or explanation on the face of the paper showing that it was used for the purpose of ratifying and authenticating the contents of the instrument, or that it imported a finality of her testamentary intent. Although it is apparent that Alice Wright was an uneducated person, it may be reasonably assumed that she was familiar with the ordinary custom of signing letters at the end, and we can but speculate as to any one of a number of reasons which impelled her to write her name at the top of the page of the writing in question. In such a situation speculation makes for a doubtful conclusion as to her real intention. The doubt thus raised prevents us from reaching the conclusion that it is manifest that her name as written was, under the circumstances mentioned, manifestly intended as her signature.

It is true that we should not seek to defeat the testamentary disposition of property which a person shows he intended to effect, but it is equally true, and quite as important, that we should not relax the plain mandatory provisions of a statutory requirement and thus establish an equivocal rule applicable, perhaps, to the emotions of the moment, or to the exigencies of a particular set of facts, and thereby throw disorder and confusion into the law regulating the testamentary disposition of property.

Experience of years has demonstrated the wisdom of precise fixed rules governing the testamentary disposition of property, and justified the requirement that such rules should be strictly followed. Ignorance, lack of foresight and carelessness may sometimes produce a situation of apparent hardship, but in the long run the advantages secured by the establishment of definite and precise rules far outweigh occasional instances of hardship.

For the foregoing reasons, we are of opinion to reverse the decree of the trial court and refuse a probate of the paper writing aforesaid as and for the last will and testament of Alice Wright, and a final decree will be here entered to that effect.

*Reversed and final decree.*